IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

EDGAR BACHMAN BROWNE,

        Plaintiff,

v.                                            Civil Action No. 3:23-CV-93
                                                 (GROH)

CPL. EDWARD BOOTH,

        Defendant.

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On April 3, 2023, the *pro se* Plaintiff, a state inmate[1] currently incarcerated at the Huttonsville Correctional Center in Huttonsville, West Virginia, filed a civil rights action pursuant to 42 U.S.C. § 1983. ECF No. 1.[2]

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that Plaintiff's complaint be dismissed without prejudice.

---

[1] According to the West Virginia Division of Corrections online offender search https://apps.wv.gov/OIS/OffenderSearch/DOC/Offender/Search, Plaintiff is serving a sentence following a conviction for driving while license suspended or revoked for driving under the influence of alcohol, third offense, and escape of person in custody of jail, in Jefferson County case numbers 21-F-101, and 22-F-77.

At the time the alleged excessive force was applied, the Plaintiff was an inmate at the Eastern Regional Jail in Martinsburg, Berkeley County, West Virginia. ECF No. 1 at 4.

[2] All ECF numbers cited herein are in 3:23-CV-93, unless otherwise noted.

## II. FACTUAL AND PROCEDURAL HISTORY

The Plaintiff's sole claim for relief in his complaint is that his Eighth Amendment rights were violated when he was assaulted by the Defendant who used excessive force upon him. ECF No. 1 at 7. The Plaintiff asserts that he complied with the Defendant's request to "step to officer," but when the Plaintiff turned away, the Defendant "punched [his] head," and slammed the Petitioner into the rear wall of the cell. The Plaintiff contends that he was handcuffed at the time, and after being hit and slammed against the wall he was OC (pepper) sprayed. Id. The Plaintiff claims he suffered sore ribs, severe lumps on his head, and dizzy spells from the OC spray. Id. at 9. As relief, the Plaintiff seeks an unspecified amount of compensatory and punitive damages, and that the Defendant "be held accountable for his actions," including the payment of fines and court costs. Id.

Attached to the complaint are copies of institutional grievances and responses. An institutional grievance document shows that the Plaintiff prepared and filed the grievance on December 30, 2022, regarding the incident which occurred on November 14, 2021. ECF No. 1-1 at 2. The December 30, 2022, grievance was rejected on January 9, 2023, because "No polic[ies] were violated." Id. The Plaintiff appealed the rejection on January 10, 2023. Id. The Superintendent rejected the appeal on January 18, 2023, because "multiple grievances [were] in one envelope." Id. The Plaintiff signed the document as received on January 25, 2023. By letter dated February 27, 2023, the West Virginia Division of Corrections and Rehabilitation, Central Office Grievance Review, rejected Plaintiff's appeal and stated, "[y]ou may consider Grievance #22-MCC-Class-62 as rejected. This is well past the date of the incident, 'approximately November 14th 2021'." ECF No. 1-1 at 1.

On June 15, 2023, the Defendant filed a motion to dismiss, along with a memorandum in support thereof. ECF Nos. 16 through 17. The Defendant contends that Plaintiff is not entitled to relief because he failed to properly exhaust his administrative remedies. ECF No. 17 at 3 – 6. Specifically, the Defendant argues that the Plaintiff did not file his grievance until December 30, 2022, more than a year after the event occurred on November 14, 2021. Id. at 6. The Defendant further asserts that the West Virginia Prison Litigation Reform Act ("WVPLRA") and the federal Prison Litigation Reform Act ("PLRA") require an inmate to exhaust administrative remedies before bringing suit in federal court. Additionally, the Defendant argues that "[t]he WVPLRA states that an inmate's administrative remedies are exhausted only after the inmate timely files a grievance, and, if denied, timely appeals the decision to the Warden and then the Commissioner if denied by the Warden." Id. at 4 (citing to W.Va. Code § 25-1A-2(d), and W.Va. CSR §§ 90-9-3 through 90-9-5).

On July 24, 2023, the Plaintiff filed a response to Defendants' motion to dismiss. ECF No. 21. Therein, the Plaintiff contends that he "filed monthly but the grievance was not received by the correct officer even after it [was] handed directly to the correct officer." Id. at 1. Further, the Plaintiff alleges that the grievance was "misplaced in an obvious attempt to cover for the charged officer." Id. The Plaintiff attached a copy of the same institutional grievance to his response which he attached to his complaint. ECF No. 21-1 at 1.

The Defendant did not file a reply.

3

### III. LEGAL STANDARD

#### A. Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion and hold those pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d)[3] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327.

---

[3] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

### B.     § 1983 Claims

The Supreme Court has held that:

> Title 42 U.S.C. § 1983 provides a cause of action against "[e]very person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...." The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.

Wyatt v. Cole, 504 U.S. 158, 161 (1992) (citing Carey v. Piphus, 435 U.S. 247, 254–257 (1978). In Gomez v. Toledo, 446 U.S. 635 (1980), the Supreme Court succinctly stated what a plaintiff must allege to sustain a civil rights action:

> By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.

Gomez, 446 U.S. at 640.

The Prisoner Litigation Reform Act (PLRA) requires proof of "physical injury." There is no recovery for mental or emotional stress without consequent physical injury. 42 U.S.C. § 1997e(e) provides, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."

### C.     Exhaustion of Administrative Remedies

Under the PLRA, a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available

administrative remedies. 42 U.S.C. § 1997e (a). "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory." Porter v. Nussle, 534 U.S. 516, 524 (2002). "In 1996, as part of the PLRA, Congress invigorated the exhaustion prescription. The revised exhaustion provision, titled 'Suits by prisoners,' states: 'No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" 534 U.S. at 524, 122 S. Ct. at 988, quoting 42 U.S.C. § 1997e(a).

### D. Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light

7

most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

## IV. ANALYSIS

A review of the complaint pursuant to 28 U.S.C. § 1915A(b), reveals that Plaintiff fails to present a claim upon which relief can be granted. Under the Prison Litigation Reform Act (PLRA), a prisoner bringing a case with respect to prison conditions must first exhaust all available administrative remedies. 42 U.S.C. § 1997e. Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). The Supreme Court of the United States has determined that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. at 532. In his complaint Plaintiff indicates that he exhausted his administrative remedies, but the documentation which he provided to support that contention, shows that he did not initiate the administrative remedy process until long after the permissible time period had elapsed. ECF No. 1-1.

Pursuant to title 90 of the West Virginia Code of State Rules (CSR), § 90-9-1 *et seq*., a grievance procedure is available to West Virginia inmates through which they may seek review of complaints related to the conditions of their confinement. https://apps.sos.wv.gov/adlaw/csr/readfile.aspx?DocId=25543&Format=PDF. Under the CSR, "[a]ny inmate may file a grievance utilizing a grievance form within fifteen (15) days of any occurrence that would cause him/her to file a grievance." WV CSR § 90-9-4.1. Pursuant to the procedures set forth in the Code of State Rules, inmates must first submit a grievance to his or her Unit Manager. WV CSR § 90-9-4.3. Upon receipt of, but prior to responding to the grievance, the Unit Manager must inspect and reject any grievance if it

"is not filed within a proper time frame, contains excessive pages, is not within the proper format or seeks to present an issue previously addressed." WV CSR § 90-9-4.4. Inmates have five days to correct any defect and to re-file a grievance, unless the grievance was rejected because it was untimely or had been addressed previously in another grievance. Id. The Unit Manager shall ensure that an answer to the grievance is provided back to the inmate within 5 days. WV CSR § 90-9-4.5. If the response at the Unit Manager level does not resolve the issue, an inmate may appeal to the Warden/Administrator within five days. WV CSR § 90-9-5.1. "The inmate shall use the same form as was submitted to the Unit Manager and signing in the appropriate location. Only the grievance form and Unit Manager's response shall be submitted." Id. Prior to responding to the appeal, the Warden/Administrator "shall review the grievance to determine whether any grounds for rejection exists in the same manner as Sections 4.4 or 5.1 or any other ground in this Rule." WV CSR § 90-9-5.3. The Warden/Administrator "shall respond to the appeal, using the grievance form, within five (5) days." WV CSR § 90-9-5.4. If the inmate believes that the Warden/Administrator's response does not resolve the grievance:

> [T]he inmate may submit an appeal to the Commissioner of the Division of Corrections within five (5) days after he/she receives the Warden/Administrator's response or the time for the response has passed. The appeal shall be submitted using the same form as was submitted to the Unit Manager and signing in the appropriate location. Only the grievance form together with the Unit Manager and Warden/Administrator's responses shall be submitted. Each grievance appealed to the commissioner shall be mailed to the Commissioner by first class mail.

WV CSR §90-9-6.1. Prior to responding to the appeal, the Commissioner, "shall review the grievance to determine whether any grounds for rejection exists in the same manner as Sections 4.4, 5.1, 5.4 and 6.1 or any other provision of this Rule. If such [ground(s)]

9

exists the grievance shall be rejected in the same manner as provided in Section 4.4." WV CSR § 90-9-6.3. The Commissioner "shall respond to the appeal, in writing, within ten (10) days." WV CSR § 90-9-6.4.

The Plaintiff's complaint states that he exhausted his administrative remedies but the documents he provided show that he failed to timely exhaust those remedies as required. ECF No. 1-1. Defendant argues that the documents provided by Plaintiff, specifically his grievance records, demonstrate that Plaintiff filed his grievance more than a year after the occurrence that caused him to file a grievance. ECF No. 17 at 4. Defendant properly cites to WV CSR § 90-9-4.1 to argue that a grievance is timely filed if it is filed within fifteen days of the occurrence being grieved. Id.

On December 30, 2022, Plaintiff filed grievance number 22-MCC-Class-62, on the West Virginia Division of Corrections and Rehabilitation (WVDCR) form. ECF No. 1-1 at 2. That grievance was filed more than a year after the events which were the subject of the grievance were alleged to have occurred. Id. In that grievance, Plaintiff complains about the events from November 14, 2021, but does not complain that he was prohibited from filing or denied forms to file a timely administrative remedy or grievance. Id. Further, in his appeals of the denial of his grievance, the Plaintiff does not appear to have alleged that he was denied required forms, or in any other way prevented from filing a grievance.

However, after the Defendant filed his motion to dismiss, the Plaintiff in his response for the first time, argues that he was prevented from filing a timely grievance by officials who refused to submit the Plaintiff's grievance to the appropriate party. ECF No. 21. Nonetheless, a review of the grievance document submitted by the Plaintiff shows that the Plaintiff prepared that grievance on December 30, 2022. The Plaintiff does not

10

present to the Court any grievance document dated prior to November 29, 2021. Any grievance document filed after that date would be considered untimely under WV CSR § 90-9-4.1.

Because failure to exhaust is an affirmative defense, the Defendant bears the burden to show that the Plaintiff failed to exhaust his administrative remedies. See Jones v. Bock, 549 U.S. 199, 216 (2007). The records submitted by the Defendant demonstrate that the Plaintiff did not timely file his grievance, and thus, the Plaintiff failed to properly exhaust his administrative remedies. The Fourth Circuit has explained that:

> [A] prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond.

Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (internal citations omitted). Here, the Plaintiff did not file his grievance until December 30, 2022, more than a year after the event occurred on November 14, 2021. The Defendant argues that the Plaintiff's failure to timely filed his administrative remedy constitutes a failure to properly exhaust.

In his response, the Plaintiff for the first time asserts that he was prevented from timely exhausting his administrative remedies by the actions of jail or prison officers, who either denied the Plaintiff access to required forms, or otherwise prevented him from preparing or mailing necessary paperwork. Despite claiming that his grievance forms were misplaced, the Plaintiff offers no evidence beyond his bare assertion to demonstrate that he was prevented, through no fault of his own, to avail himself of the administrative

11

remedies. The Plaintiff fails to provide any evidence that prior attempts were made to submit grievances in a timely manner. No copies of previously submitted grievance forms are attached. No communication by email or otherwise by the Plaintiff to reflect his pursuit of those grievances has been submitted to the court. Plaintiff has submitted nothing more than his bare assertions.

Accordingly, for all the above reasons, it is apparent that the Plaintiff has not exhausted the grievance procedure by timely filing a grievance, and filing subsequent timely appeals with the Unit Manager, the Warden/Administrator, then the Commissioner, before filing his complaint in federal court.

Because Plaintiff failed to exhaust his administrative remedies prior to filing this action, the Court is without jurisdiction to consider his claims. When subject-matter jurisdiction does not exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 118 S.Ct. 1003, 1012–16 (1998); Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999). For all of the above reasons the case should be dismissed without prejudice.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the Defendant's motion to dismiss [ECF No. 16] be **GRANTED**, and that the **Complaint be Dismissed without prejudice**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should

also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED:** October 12, 2023

_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE